UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DERRICK LEE SMITH,

                Plaintiff,

v.

UNKNOWN HALL et al.,

                Defendants.
_____/

Case No. 1:18-cv-277

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Palmer, Hall, Breedlove, Bonn, and Russell for failure to state a claim.

**Discussion**

I. **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan. The events about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia, Michigan. Plaintiff sues RMI Warden Carmen Palmer; RMI Corrections Officers Unknown Hall, Unknown Breedlove, and Unknown Bonn; and MDOC Grievance Section Manager Richard D. Russell. In Plaintiff's complaint and the grievances he attached to his complaint, Plaintiff alleges on August 18, 2017, right before lunch, Defendant Hall told Plaintiff he could use the JPay kiosk upon his return from lunch. When he returned and connected, however, Defendant Hall told him he was not to be on JPay. When Defendant protested, Defendant Hall informed him: "I love taking you black bastards to segregation." (Aug. 23, 2017 Grievance, ECF No. 1-1, PageID.8.) Defendant Hall ordered Plaintiff to give her his ID and then ordered Plaintiff to return to his cell. Defendant Hall wrote a Class III misconduct ticket against Plaintiff for being out of place. Plaintiff lost privileges for five days as a result. Plaintiff claims Defendant Hall's words indicate racial discrimination. He argues that her actions violate the First, Eighth, and Fourteenth Amendments.

The remaining Defendants are named because they allegedly "allowed" Defendant Hall's misconduct by their respective responses to Plaintiff's grievances and appeals regarding the matter.

Plaintiff seeks a declaration that Defendants have violated Plaintiff's rights under the First, Eighth, and Fourteenth Amendments, removal of the misconduct ticket from Plaintiff's

file, an injunction against transferring Plaintiff to a facility where Defendants are employed, and damages in the amount of $4,000.00.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was

3

committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff alleges that Defendants' conduct violated his First, Eighth, and Fourteenth Amendment rights.

Plaintiff fails to make specific factual allegations against Defendants Breedlove, Bonn, Palmer, and Russell, other than his claim that they failed to remedy Defendant Hall's alleged misconduct in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Breedlove, Bonn, Palmer, and Russell engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff's allegations against Defendant Hall at least attribute actions to her beyond responding to grievances; but, he fails to state a claim against her as well. Plaintiff's principal complaint against Defendant Hall is her statement that she enjoys putting "black bastards" in segregation. There is nothing in Plaintiff's complaint that indicates that Defendant Hall put Plaintiff in segregation in connection with the events described in the complaint.

The conduct described does not rise to the level of an Eighth Amendment violation. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not create intolerable prison confinement. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3

(6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth Amendment) (citing *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir.1985)); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude); *Bell-Bey v. Mayer*, No. 98-1425, 1999 WL 1021859, at *1 (6th Cir. Nov. 3, 1999) (same); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Hall arising from her verbal abuse.

Five days' loss of privileges also falls short of the sort of barbarous punishment that is forbidden by the Eighth Amendment. Mere confinement to a cell or loss of privileges for a few days does not rise to the level of cruel and unusual punishment proscribed by the Eighth

6

Amendment. In fact, the Supreme Court has recognized that the more serious sanction of placement in segregation, which involves even greater restrictions on a prisoner's privileges, is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). The Sixth Circuit has described the loss of certain privileges as an "inconvenience" that is "insufficient to support and Eighth Amendment claim." *Bishawi v. Northeast Ohio Corr. Center*, 628 F. App'x 339, 345-346 (6th Cir. 2014); *see also Alexander v. Vittitow*, No. 17-1705, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017) ("Temporary loss of privileges . . . without any allegations that basic human needs were not met—cannot establish an Eighth Amendment claim.") (citing *Bishawi*). Moreover, the filing of a false misconduct report does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2138, 1999 WL 1021856, at *2 (6th Cir. 1999) ("[N]either verbal harassment or threats nor the filing of a false misconduct report constitute punishment within the context of the Eighth Amendment.") (citing *Ivey*, 832 F.2d at 955 and *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001) (a prisoner's claim that he was punished on the basis of a false misconduct report fails to state an Eighth Amendment claim). Plaintiff, therefore, fails to state an Eighth Amendment claim.

Plaintiff also alleges that Defendant Hall violated the Fourteenth Amendment. He does not specify which clause of the Fourteenth Amendment provides the basis for his claim. His complaint fails to state a claim under either the Due Process Clause or the Equal Protection Clause. Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.

7

The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Plaintiff acknowledges that his "out of place" misconduct was a Class III minor misconduct.

A minor misconduct conviction does not implicate the Due Process Clause. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff's minor misconduct, therefore, does not implicate the Due Process Clause.

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment

either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). Plaintiff does not allege disparate treatment here.

Finally, Plaintiff contends that Defendant Hall violated his First Amendment rights. The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff's free speech rights are "uncontrovertedly limited by virtue of [Plaintiff's] incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999).

Plaintiff does not identify the First Amendment right that was violated. Two are potentially implicated by his recitation of the facts: the right to free speech and the right to petition the government for a redress of grievances. MDOC Director's Office Memorandum 2018-2 explains that prisoners may use a JPay kiosk to communicate by email with persons who have sent the prisoner an email. MDOC Director's Office Memorandum 2018-2.

Here, Plaintiff was prevented from using the JPay kiosk at that particular time; but, he does not allege he was precluded from using the kiosk permanently. Moreover, he does not allege that he was precluded from communicating by other means such as by letter or telephone.

A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only "one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials" while leaving a formal grievance procedure

9

intact. *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977). The MDOC Director's Office Memorandum regarding JPay emails makes clear that the ability to so communicate is a privilege and that the privilege can be limited. The court's have routinely agreed. While prisoners have a First Amendment right to communicate with the outside world, *see Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002); *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989), they do not have a constitutional right to a particular form of communication, such as access to email. *See, e.g., Solan v. Zickefoose*, 530 F.App'x 109, 112 (3d Cir. 2013) (BOP Program Statement regarding Federal Bureau of Prisons prisoner email system (TRULINCS) is entirely consistent with 18 U.S.C. § 4042(a)(2), which authorizes the BOP to "provide for the safekeeping, care, and subsistence" of Federal prisoners); *Lineberry v. Federal Bureau of Prisons*, 923 F. Supp. 2d 284, 293 (D.D.C. 2013) (citing cases and holding that prior iteration of BOP TRULINCS policy, PS 4500.11, is constitutional); *Hoffman v. Fed. Bureau of Prisons*, 2013 WL 5529612, *4 (S.D. Ill. Oct. 7, 2013) (the BOP's Program Statement regarding email access "easily passes the reasonableness inquiry [and] has an obvious connection to the interests of protecting the public and maintaining prison security."); *Edington v. FCI Elkton*, No. 4:14CV2397, 2015 WL 1843240, *3 (N.D. Ohio Apr. 22, 2015); *Bristow v. Amber*, No. 2:12–cv–412, 2012 WL 1963577, *2–3 (S.D. Ohio May 31, 2012) (prisoners do not have a First Amendment right to access email); *Grayson v. Federal Bureau of Prisons*, 2012 WL 380426, *3 (N.D.W.Va. Feb. 6, 2012) ("[P]risoners have no First Amendment constitutional right to access email."); *Rueb v. Zavaras*, 2011 WL 839320, *6 (D.Colo. Mar.7, 2011) (holding that inmates do not have a First Amendment right to have access to email); *Holloway v. Magness*, No. 5:07cv88, 2011 WL 204891, at *7 (E.D. Ark. Jan. 21, 2011) ("[A]ssuming that the free speech clause of the First Amendment requires prisons to permit communication between

prisoners and persons outside the prison, . . . the First Amendment [does not require] that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances; the First Amendment is a limit on the exercise of governmental power, not a source of positive obligation . . . ."); *Dunlea v. Federal Bureau of Prisons*, No. 3:10–CV–214, 2010 WL 1727838 (D. Conn. Apr. 26, 2010), abrogated on other grounds by *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010) ("Because the use of TRULINCS was a privilege, the BOP and Warden Zickefoose had complete discretion in determining whether Dunlea was entitled to use TRULINCS at all or on a limited basis."). In short, the limited restriction on Plaintiff's right to use the JPay email system does not violate his First Amendment rights to free speech or to petition for redress of grievances.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   April 3, 2018                             /s/ Robert J. Jonker
                                                   Robert J. Jonker
                                                   Chief United States District Judge